**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MELISSA ATKINSON,**

                        **Plaintiff,**               **1:10-cv-994**
                                              **(GLS/RFT)**

        **v.**

**NEW YORK STATE OLYMPIC REGIONAL**
**DEVELOPMENT AUTHORITY, GAIL**
**SETLOCK, DAVID BULMER, and MICHAEL**
**PRATT,**
                            **Defendants.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Lemire, Johnson Law Firm        GREGG T. JOHNSON, ESQ.
P.O. Box 2485                      MARK J. LEMIRE, ESQ.
2534 Route 9
Malta, NY 12020

**FOR THE DEFENDANTS:**

*ORDA, Setlock, and Pratt*
HON. ERIC T. SCHNEIDERMAN     ADRIENNE J. KERWIN
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

*Bulmer*
Towne, Ryan & Partners PC       CLAUDIA A. RYAN, ESQ.
450 New Karner Road            JOHN F. MOORE, ESQ.
P.O. Box 15072

Albany, NY 12205
**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Melissa Atkinson commenced this action against defendants New York State Olympic Regional Development Authority (ORDA), Gail Setlock, David Bulmer, and Michael Pratt, asserting claims of hostile work environment, gender-based discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. § 1983, and the New York State Human Rights Law (NYSHRL).[2]  (Compl. ¶¶ 55-72, Dkt. No. 1.) Pending are defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 8, 16.)  For the reasons that follow, the motions are granted in part and denied in part.

### II. Background

**A.    Factual History**

Plaintiff Melissa Atkinson was hired in November 2003 by defendant

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] N.Y. Exec. Law § 296 (McKinney 2010).

2

ORDA for the position of "Administrative Staff" at Gore Mountain.[3]  (Compl. ¶¶ 19-20, Dkt. No. 1.)  In November 2005, Atkinson was promoted to the position of "Kid Klub Supervisor," which she held each year until the end of the 2007-2008 ski season.  (*Id.* ¶¶ 21-22.)  While employed in that position, Atkinson "was never disciplined or provided with any written performance evaluations describing her work performance in anything other than positive terms."  (*Id.* ¶ 25.)

Atkinson alleges that during the 2005-2006, 2006-2007, and 2007-2008 ski seasons, defendant David Bulmer, her immediate supervisor, "sexually harass[ed] [her] by directing unwelcome and offensive gender-based behavior towards her at the workplace."  (*Id.* ¶¶ 26-27.)  Specifically, Atkinson alleges that Bulmer repeatedly and continuously grabbed her, touched her breasts, and slapped her on the buttocks.  (*Id.* ¶ 27.)  Atkinson further contends that Bulmer made sexually inappropriate comments to her on a regular and continuous basis, including offensive and unwelcome comments about his genitalia.  (*Id.* ¶¶ 28-29.)  According to Atkinson, "Bulmer did not direct similar inappropriate, offensive, and unwelcome

---

[3]ORDA is a public benefit corporation engaged in, among other things, the operation of Gore Mountain.  (*See* Compl. ¶ 12, Dkt. No. 1.)

behavior towards male employees."  (*Id.* ¶ 31.)

In October 2007, Atkinson made an internal complaint of harassment and discrimination to Kurt Wissell, ORDA's Assistant Manager at Gore Mountain.  (*Id.* ¶ 33.)  In connection with her complaint, Atkinson was interviewed by David McKillop and Trudy Stanton from ORDA's Human Resources Department.  (*Id.* ¶ 34.)  Thereafter, Atkinson claims she was told by Mr. McKillop that ORDA was giving Bulmer the option to resign "or face disciplinary charges for lying during an investigation and for his sexual harassment of [her]."  (*Id.* ¶ 35.)

In November 2007, Bulmer resigned from his employment with ORDA.  (*See id.* ¶ 36.)  Atkinson contends that defendant Gail Setlock, Assistant Mountain Services Manager of Gore Mountain, blamed her for Bulmer's resignation and "was angry at [Atkinson] for complaining of sexual harassment."  (*Id.* ¶ 37.)[4]

In connection with his resignation, Bulmer was allegedly provided free season passes to ski at Gore Mountain.  (*Id.* ¶ 39.)  Atkinson further alleges that during the 2007-2008 ski season, following Bulmer's

---

[4]Atkinson alleges that "Setlock and Bulmer were personal friends and often spent a significant amount of time together at Gore Mountain after ... Bulmer's resignation." (Compl. ¶ 38, Dkt. No. 1.)

4

resignation, he frequently sought her out and "continued to sexually harass her at her workplace." (*Id.* ¶ 40.)  During that season, Atkinson complained to defendant Michael Pratt, General Manager of Gore Mountain, regarding Bulmer's continued sexual harassment of her.  (*Id.* ¶ 41.)  According to Atkinson, however, Pratt refused to take any action in response to her complaints.  (*Id.* ¶ 42.)  Instead, Atkinson alleges that Pratt told her "in words, or in substance: 'David Bulmer no longer works at the Mountain, but he has a right to be there to ski.  You will have to get used to it.  Bulmer isn't going to move away.'" (*Id.*)

At the end of the 2007-2008 ski season, Atkinson was advised that her employment would continue for the 2008-2009 season.  (*Id.* ¶ 44.)  Atkinson contends, however, that on June 29, 2008, "[she] was notified that the qualifications for the position of Kids Klub Supervisor had been changed to include qualifications that [her] supervisors knew she did not possess." (*Id.* ¶ 45.)  The next day, Atkinson contacted the ORDA Human Resources Department and was advised that Setlock and Pratt had instituted the change in job qualifications.  (*Id.* at ¶ 46.)  Atkinson alleges further that during a subsequent telephone call, Setlock told her that she should not apply for her former Supervisor position because she would not

5

be hired.  (*Id.* ¶ 48.)  Setlock also allegedly sent a June 30, 2008 email to all snow sports staff from the 2007-2008 season, "informing them that the position of Kids Klub Supervisor was available and that anyone interested should apply."  (*Id.* ¶ 49.)  Ultimately, Atkinson was not rehired for the position of Kids Klub Supervisor, and she alleges that the individual that replaced her did not possess all of the newly-added job qualifications.  (*Id.* ¶ 50.)

**B.   Procedural History**

On July 28, 2008, Atkinson filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), complaining of acts of unlawful discrimination and retaliation.  (*Id.* ¶ 6.)  The EEOC found reasonable cause to believe that in terminating her employment shortly after she lodged sexual harassment complaints, ORDA retaliated against Atkinson in violation of Title VII.  (*See id.* ¶ 7.)  On May 21, 2010, Atkinson received a right-to-sue letter from the EEOC and on August 17, 2010, she commenced the present action against defendants.  (*Id.* ¶ 8.)

**III.  Standard of Review**

The standard of review under Federal Rules of Civil Procedure 12(b)(6) is well established and will not be repeated here.  For a full

discussion of the standard, the court refers the parties to its previous opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

### A.    Title VII

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Atkinson asserts two grounds upon which she alleges that ORDA violated Title VII: (1) hostile work environment, and (2) retaliation.  (Compl. ¶¶ 55-60, Dkt. No. 1.)

### 1.    Hostile Work Environment

Atkinson contends that ORDA is liable under Title VII for subjecting her to a hostile work environment created by the discriminatory acts of Bulmer both during his employment at Gore Mountain and following his resignation.  (Compl. ¶¶ 56-58, Dkt. No. 1.)  ORDA seeks dismissal of Atkinson's hostile work environment claim under the theory that liability

7

cannot be imputed to it for either Bulmer's pre or post-resignation conduct. (Dkt. No. 8, Attach. 1 at 3-5.)  The court disagrees.

A hostile work environment under Title VII is one in which the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citation omitted).  To establish a hostile work environment claim, a plaintiff must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation marks and citation omitted).

To satisfy the first prong of this test, the misconduct alleged must be "severe or pervasive enough to create an objectively hostile or abusive work environment" and the plaintiff must "subjectively perceive that environment to be abusive." *Id.* (quotation marks and citation omitted). Atkinson alleges that between the 2005-2006 and 2007-2008 ski seasons, Bulmer regularly engaged in unwelcome and offensive sexual behavior.

(Compl. ¶¶ 27-29, Dkt. No. 1.)  Specifically, she alleges that Bulmer repeatedly grabbed her, touched her breasts, slapped her buttocks and made sexually inappropriate comments, including references to his genitalia.  (*Id.*)

Under the second prong, an employer is not automatically liable for sexual harassment committed by its employee.  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004).  Where the harassment is attributed to a supervisor, however, but does not culminate in a tangible employment action, the employer bears liability unless it successfully establishes that it both "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Id.* (quotation marks and citation omitted).

The attribution of pre-resignation harassment to Bulmer, Atkinson's immediate supervisor, is sufficient at this stage to survive ORDA's motion to dismiss.  The court, therefore, need not address the issue of ORDA's potential liability for failing to remedy Atkinson's complaints of harassment

by Bulmer following his resignation.[5]  Because Atkinson has met the

minimum requirements of showing objective and subjective hostility and

sufficient grounds upon which to impute to ORDA Bulmer's conduct,

ORDA's motion to dismiss is denied as to Atkinson's Title VII hostile work

environment claim.

## 2.    Retaliation

Atkinson further alleges that ORDA is liable under Title VII for

retaliating against her in response to her complaints of sexual harassment.

(Compl. ¶¶ 58-60, Dkt. No. 1.)  ORDA seeks to dismiss Atkinson's

retaliation claim on the grounds that she failed to adequately allege the

existence of protected activity and an adverse employment action.  (Dkt.

No. 8, Attach. 1 at 5-6.)  The court disagrees with ORDA on both points.

Title VII provides that "[i]t shall be an unlawful employment practice for an

employer to discriminate against any of his employees . . . because [that

employee] has made a charge, testified, assisted, or participated in any

---

[5] It should be noted, however, that the Second Circuit has reserved judgment on the question of employer liability for the harassment of an employee by a non-employee, but has held that if it does in fact exist, it is limited to instances in which the employer "provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998), *abrogated in part on other grounds by*, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  The Southern District has answered the question in the affirmative and applied the test suggested in *Quinn. See Lopes v. Caffe Centrale LLC,* 548 F. Supp. 2d 47, 53 (S.D.N.Y. 2008); *Heskin v. Insite Advertising,Inc.,* No. 03-cv-2598, 2005 WL 407646, at *20-21 (S.D.N.Y. Feb. 22, 2005).

manner in an investigation, proceeding or hearing."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *McMenemy v. City of Rochester*, 241 F.3d 279, 282 (2d Cir. 2001).  The plaintiff's burden at this stage is "minimal."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

For a plaintiff's actions to constitute a protected activity, she must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *McMenemy v. City of Rochester,* 241 F.3d 279, 283 (2d Cir. 2001).  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597 (2d Cir. 2006) (quotation marks and citation omitted).

Atkinson alleges that following her October 2007 complaint of sexual harassment, Pratt and Setlock changed the job requirements for her position of Kids Klub Supervisor so as to render her unqualified for that role.  (Compl. ¶¶ 51-54, Dkt. No. 1.)  Atkinson further contends that Setlock

11

explicitly told her not to re-apply for the position of Kids Klub Supervisor because she would not be hired.  (*Id.* ¶ 48.)  Both the change in job qualifications and Setlock's discouragement from re-applying for the position, according to Atkinson, were retaliatory measures taken in response to her sexual harassment complaint.  (*Id.* ¶¶ 51-54.)

In alleging that she was constructively forced from her position in retaliation for submitting a good faith complaint of sexual harassment, Atkinson has met her burden at this juncture.  ORDA's motion to dismiss Atkinson's Title VII retaliation claim is therefore denied.

## B.    42 U.S.C. § 1983

Section 1983 provides a "private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation" of constitutional rights.  *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  A valid § 1983 claim requires a showing of personal involvement by the defendant in the alleged constitutional deprivation.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  Atkinson alleges that all defendants are liable under § 1983 for violating her rights under the First and Fourteenth Amendments.  She also alleges a

constitutional violation under *Monell*.[6]  (Compl. ¶¶ 62-65, Dkt. No. 1.)

### 1.    Eleventh Amendment Immunity

ORDA, with Pratt and Setlock in their official capacities, argue that Atkinson's § 1983 claims should be barred by the Eleventh Amendment. (Dkt. No. 8, Attach. 1 at 6-7.)  The Eleventh Amendment bars suit in federal court against a state "or one of its agencies by its own citizens in the absence of the state's explicit consent to be sued or Congress' unequivocal abrogation of immunity."  *Turner v. Olympic Reg'l Dev. Auth.,* 89 F. Supp. 2d 241, 246 (N.D.N.Y. 2000).  ORDA is a state entity for purposes of Eleventh Amendment analysis.  *Id.*  ORDA is therefore immune from Atkinson's § 1983 claim, as are Pratt, Setlock and Bulmer—though he did not raise the issue in his papers—in their official capacities.  Defendants' motion to dismiss Atkinson's § 1983 claim is therefore granted as to ORDA as well as Pratt, Setlock and Bulmer in their official capacities.

### 2.    *Monell*

Atkinson further alleges that by failing to properly respond to her complaints of discrimination and by retaliating against her, defendants "condoned and/or acquiesced" in the discrimination, "thereby establishing a

---

[6] *Monell v. Dept. of Soc. Servs. of N.Y.,* 436 U.S. 658 (1978).

*de facto* unconstitutional municipal pattern, practice or policy" pursuant to *Monell v. Dep't. of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978).  (Compl. ¶ 64, Dkt. No. 1.)  While *Monell* provides a basis for municipal liability, it does not affect the immunity enjoyed by states under the Eleventh Amendment.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989) (citation omitted). Because ORDA is a state entity, not a municipality, any *Monell* claim against it must fail.  Additionally, because *Monell* liability does not apply to individuals, Atkinson's claim must also fail as to the remaining defendants. Atkinson's claims of municipal liability under *Monell* are therefore dismissed.

### 3.    Equal Protection

The Equal Protection clause protects individuals from sex discrimination in public employment, including sex discrimination in the form of sexual harassment.  *See Annis v. Cnty. of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) (citation omitted).  Atkinson alleges liability on behalf of all defendants under the Equal Protection clause of the Fourteenth Amendment for, under the color of state law, violating her constitutional rights and being "deliberately indifferent to [those] constitutional rights."  (Compl. ¶ 62, Dkt. No. 1.)

14

### a.    Bulmer

### i.    Post-Resignation Conduct

Bulmer argues unopposed that Atkinson's Equal Protection claim should be dismissed insofar as it concerns conduct or employment actions taken after his resignation from ORDA.  (*See* Dkt. No. 16, Attach. 2 at 4-5.) The court agrees.

To succeed on a claim under § 1983, a plaintiff must demonstrate that "the challenged conduct was attributable at least in part to a person who was acting under color of state law."  *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999).  Thus, Bulmer's motion to dismiss Atkinson's Equal Protection claim is granted as to any conduct that occurred following his resignation from ORDA.[7]

### ii.    Pre-Resignation Conduct

Bulmer next seeks to dismiss Atkinson's Equal Protection claim as it relates to his conduct while employed by ORDA.  (*See* Dkt. No.16, Attach. 2 at 5-6; Dkt. No. 21 at 2-6.)  He argues primarily that the alleged harassment does not rise to the level of sex discrimination under § 1983.

---

[7] Bulmer also moves to dismiss Atkinson's *Monell* and First Amendment claims to the extent that they relate to his post-employment conduct.  (*See* Dkt. No. 16, Attach. 2 at 4-10.) The court need not address these grounds because Atkinson's *Monell* and First Amendment claims are dismissed as to all defendants.  *See supra* Part IV.B.2; *infra* Part IV.B.4.

(*See* Dkt. No. 21 at 2-6.)  The court disagrees.

While the Equal Protection clause protects individuals from sex discrimination in public employment, the Second Circuit has made clear that sexual harassment does not categorically equate to sex discrimination under § 1983.  *Annis v. Cnty. of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) (citation omitted).  To rise to the level of a constitutional tort, sexual harassment must "transcend[] coarse, hostile and boorish behavior." *Id.* (citing *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994)).

Atkinson alleges that from the 2005-2006 season until November 2007, Bulmer, as a state actor, repeatedly grabbed her, touched her breasts and slapped her buttocks.  (Compl. ¶ 27, Dkt. No. 1.)  She also contends that Bulmer regularly directed offensive sexual gestures towards her and continuously made inappropriate sexual remarks to her, including comments about his genitalia.  *(Id.* ¶¶ 28-30.)

While Bulmer cites case law in which actions similar to those alleged here were ultimately deemed insufficient to support a finding of sex discrimination,[8] Atkinson has pled facts sufficient to support a plausible Equal Protection claim.  Bulmer's motion to dismiss Atkinson's Equal

---

[8] *See* Dkt. No. 21 at 2-6.

Protection claim is therefore denied as to the actions taken by Bulmer while he was employed by ORDA.

**b.    Pratt and Setlock**

Atkinson also alleges that Pratt and Setlock violated her rights under the Equal Protection clause by, *inter alia*, failing to remedy her complaints of Bulmer's post-resignation sexual harassment.  (*See* Dkt. No. 10 at 12; Compl. ¶ 62, Dkt. No. 1.)  Pratt and Setlock seek to dismiss Atkinson's Equal protection claim primarily on the grounds that supervisor liability cannot attach because Bulmer was a private citizen at the time of his alleged harassment.  (Dkt. No. 8, Attach. 1 at 8.)  The court disagrees that dismissal is warranted at this juncture.

While the doctrine of *respondeat superior* cannot be used to establish liability under § 1983 in light of the requirement of personal involvement, a supervisor may be held personally liable if he "(1) directly participated in the infraction, (2) failed to remedy the wrong after learning of the violation, (3) created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event." *Abbas v. Senkowski*, No. 03-cv-476, 2005 WL 2179426, at *2 (N.D.N.Y.

17

Sept. 9, 2005) (citing *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

As noted above, Atkinson has alleged facts sufficient to state a plausible Equal Protection claim based on Bulmer's purported pre-resignation harassment.  Atkinson alleges that following Bulmer's resignation, he frequently returned to Gore Mountain and persisted in the same behavior that prompted her earlier complaints.  (Compl. ¶ 40, Dkt. No. 1.)  Atkinson further contends that Pratt and Setlock were made aware of Bulmer's continued harassment and refused to take corrective action. (*Id.* ¶¶ 41-42.)  Pratt, Atkinson contends, responded to her complaints by telling her "in words, or in substance," that she would "have to get used to it."  (*Id.* ¶ 42).

As discussed above, the question of whether an employer is liable for the discriminatory acts of a non-employee is an open one in this Circuit. Accordingly, the motion to dismiss Atkinson's Equal Protection claims as to Pratt and Setlock is denied.

**4.   First Amendment**

Atkinson next asserts claims against all defendants alleging that each, "under color of state law, retaliated against [her] in violation of [her]

First Amendment [r]ights." (Compl. ¶ 27, Dkt. No. 1.)  Defendants seek to

dismiss Atkinson's First Amendment claim, arguing that it is deficient in all

respects.  (Dkt. No. 8, Attach. 1 at 9-10; Dkt. No. 16, Attach. 2 at 6-8.)  The

court agrees with defendants that Atkinson has failed to plead a plausible

First Amendment retaliation claim.

To state a claim for First Amendment retaliation pursuant to § 1983, a

plaintiff must show that "(1) his speech was constitutionally protected, (2)

he suffered an adverse employment decision, and (3) a causal connection

exists between his speech and the adverse employment determination

against him, so that it can be said that his speech was a motivating factor in

the determination." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).

While defendants argue that Atkinson's pleadings are deficient as to

each prong, the court need only address the issue of protected speech.  To

engage in constitutionally protected speech, a plaintiff must have spoken

as a citizen on a matter of "political, social, or other concern to the

community." *Id.* (quotation marks and citation omitted).  Speech relating to

a "purely private matter, such as an employee's dissatisfaction with the

conditions of [her] employment, does not pertain to a matter of public

concern," and therefore does not implicate the First Amendment.  *Lewis v.*

*Cowen*, 165 F.3d 154, 164 (2d Cir. 1999).  Complaints of gender-based

employment discrimination generally fail to qualify as protected speech

because such complaints are typically personal in nature and relate solely

to the employee's unique employment situation as opposed to systemic

discrimination.  *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143

(2d Cir. 1993) (internal citations omitted).  Whether speech does implicate

the First Amendment is a question of law for the court to decide.  *Id.* at 163

(citation omitted).

Here, Atkinson alleges that she was retaliated against for her

"complaints of discrimination and harassment."  (Compl. ¶ 54, Dkt. No. 1.)

As Atkinson's complaint makes clear, however, those complaints were

personal in nature and related to her own situation.  Indeed, Atkinson's

complaint is devoid of any allegations or facts suggesting that she was

complaining of any form of pervasive systemic sexual harassment, or that

her internal complaints were part of an overall effort to correct allegedly

unlawful practices or bring them to public attention.

Thus, Atkinson has failed to state a claim for First Amendment

retaliation, and that claim is dismissed as to all defendants.

**C.**   **New York Executive Law § 296**

20

Section 296 of the New York State Human Rights Law (NYSHRL) makes it unlawful for an employer to discriminate on the basis of, *inter alia,* sex.  N.Y. Exec. Law § 296(1)(a) (McKinney 2010).  It also makes it unlawful for any employer to "discriminate against any person because he or she has opposed any practices forbidden" under § 296.  *Id.* at (1)(e).

Atkinson alleges that all defendants are liable under § 296 for gender discrimination, creating a hostile work environment and retaliation.  (Compl. ¶¶ 66-72, Dkt. No. 1.)  As a preliminary matter, the court notes that ORDA as well as Pratt, Setlock and Bulmer in their professional capacities, enjoy Eleventh Amendment immunity from suit in federal court.  Atkinson's § 296 claims as to those defendants are therefore dismissed.

**1.    Hostile Work Environment**

**a.    Pratt and Setlock**

Pratt and Setlock seek to dismiss Atkinson's § 296 hostile work environment claim on grounds identical to those raised by ORDA in relation to Atkinson's Title VII claim; principally that Bulmer's actions cannot be attributed to them.  (Dkt. No. 8, Attach.1 at 3-5, 12.)

Section 296 claims are "analytically identical to claims brought under

21

Title VII."[9]  *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997).  In light of this common analysis, the arguments that failed for ORDA likewise fails for Pratt and Setlock.[10]  Because Pratt and Setlock are individuals as opposed to traditional employers, however, the dispositive question therefore becomes whether they are individually liable under § 296.

Unlike Title VII, the NYSHRL provides for individual liability in certain circumstances.  First, an individual employee may be personally liable if he is shown to "have any ownership interest or any power to do more than carry out personnel decisions made by others."  *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 542 (1984).  Second, individual liability attaches where "any person," *inter alia*, aids or abets any discriminatory practice forbidden under § 296.  N.Y. Exec. Law § 296(6).

Atkinson alleges that Pratt and Bulmer both changed the qualifications for the position of Kids Klub Supervisor.  (Compl. ¶¶ 45-46, Dkt. No. 1.)  She further alleges that she complained of Bulmer's post-employment harassment and that Pratt and Setlock refused to take remedial measures.  (Compl. ¶¶ 41-42, Dkt. No. 1; Dkt. No. 8 at 12.)

---

[9] *See supra* Part IV.A.1-2. for a full discussion of the Title VII hostile work environment and retaliation analysis.

[10] *See supra* Part IV.A.1.

Accordingly, Atkinson has pled facts sufficient to support a plausible claim for individual liability under § 296 against Pratt and Setlock.  Pratt and Setlock's motion to dismiss Atkinson's § 296 claim for discrimination and hostile work environment is therefore denied.

### b.    Bulmer

Atkinson asserts that Bulmer is liable for gender discrimination and the creation of a hostile work environment as an aider and abettor under § 296(6) for his actions both during and after his employment with ORDA. (Dkt. No. 19 at 4-6.)  Bulmer seeks dismissal of Atkinson's § 296 claim on the theory that § 296 liability is absent as to the other defendants, and he cannot be considered an aider or abettor to his own actions.  (Dkt. No. 16, Attach. 2 at 10-12.)  The court disagrees that dismissal is warranted at this juncture.

To be liable under § 296(6), a plaintiff must show that "the individual aided or abetted a primary violation of the NYHRL committed by another employee or the *business itself*."  *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 213 (N.D.N.Y. 2002) (quotation marks and citation omitted) (italics in original).

Because Atkinson's § 296 hostile work environment claim as against

23

Pratt and Setlock persists, Atkinson has pled facts sufficient to support a plausible claim that Bulmer's alleged behavior constituted aiding and abetting pursuant to § 296(6).  Bulmer's motion to dismiss Atkinson's discrimination and hostile work environment claim under § 296 is therefore denied.

## 2.    Retaliation

### a.    Pratt & Setlock

Atkinson alleges that Pratt and Setlock also violated § 296 by "retaliating against [her] in response to [her] having engaged in protected activity."  (Compl. ¶ 71, Dkt. No. 1.)   As discussed above in Parts IV.A.2 and IV.C.1.a, respectively, Atkinson has alleged facts sufficient to support a claim of retaliation and to impute individual liability under § 296 on Pratt and Setlock.  The motion to dismiss Atkinson's § 296 retaliation claim as against Pratt and Setlock is therefore denied.

### b.    Bulmer

Atkinson also alleges that Bulmer is liable under § 296 for aiding and abetting Pratt and Setlock's retaliatory actions against her.  (Dkt. No. 19 at 6; Compl. ¶ 71, Dkt. No. 1.)  Despite her allegations that Bulmer harassed her both during and following his employment with ORDA, (Compl. ¶¶ 26-

30, 40, Dkt. No. 1.), Atkinson alleges no facts which suggest that Bulmer aided, abetted, or in any way influenced Pratt and Setlock's allegedly discriminatory employment actions.  Bulmer's motion to dismiss Atkinson's § 296 retaliation claim is therefore granted and Atkinson's claim as against Bulmer is dismissed.

**D.**    **Punitive Damages**

Atkinson seeks, *inter alia*, punitive damages against defendants. (Compl. Prayer for Relief, Dkt. No. 1.)  Bulmer seeks to dismiss this claim for punitive damages as against him in his professional capacity under the theory that such damages are not available against municipal officers. (Dkt. No. 16, Attach. 2 at 13-14.)

As noted above, ORDA is a state entity, not a municipality.  This point is moot however, because Atkinson's claims against Bulmer in his official capacity have been dismissed.

Bulmer further seeks to dismiss Atkinson's claim for punitive damages as against him in his individual capacity under § 1983 for lack of evil motive or intent.  (Dkt. No. 16, Attach. 2 at 14.)  In an action under § 1983, a jury may assess punitive damages when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

25

reckless or callous indifference to the federally protected rights of others."
*Smith v. Wade*, 461 U.S. 30, 56 (1983).  In alleging that Bulmer repeatedly and continuously subjected her to sexual gestures, comments and touching, Atkinson has pled facts sufficient to support a plausible claim for punitive damages.  Accordingly, Bulmer's motion to dismiss Atkinson's punitive damage claim as against him in his individual capacity under § 1983 is denied.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that ORDA, Pratt and Setlock's motion to dismiss (Dkt. No. 8) is **GRANTED** in part as to:

1. Atkinson's 42 U.S.C. § 1983 claims against ORDA and Pratt and Setlock, in their official capacities, are **DISMISSED**;

2. Atkinson's First Amendment claims against ORDA, Pratt and Setlock are **DISMISSED**;

3. Atkinson's *Monell* claims against ORDA, Pratt and Setlock are **DISMISSED**; and it is further

**ORDERED** that ORDA, Pratt and Setlock's motion to dismiss (Dkt. No. 8) is **DENIED** in part as to:

1. Atkinson's Title VII claims against ORDA;

2. Atkinson's Fourteenth Amendment Equal Protection claim**s** against Pratt and Setlock in their individual capacities;

3. Atkinson's N.Y. Exec. Law § 296 Discrimination and Hostile Work Environment claims against Pratt and Setlock;

4. Atkinson's N.Y. Exec. Law § 296 Retaliation claims against Pratt and Setlock; and it is further

**ORDERED** that Bulmer's motion to dismiss (Dkt. No. 16) is **GRANTED** in part as to:

1. Atkinson's 42 U.S.C. § 1983 claims against Bulmer in his official capacity are **DISMISSED**;

2. Atkinson's *Monell* claim against Bulmer is **DISMISSED**;

3. Atkinson's Fourteenth Amendment Equal Protection claim against Bulmer in his individual capacity for any conduct that occurred after his resignation from ORDA is **DISMISSED**;

4. Atkinson's First Amendment claim against Bulmer is **DISMISSED**;

5. Atkinson's N.Y. Exec. Law § 296 Retaliation claim against Bulmer is **DISMISSED**; and it is further

27

ORDERED that Bulmer's motion to dismiss (Dkt. No. 16) is **DENIED** in part as to:

> 1. Atkinson's Fourteenth Amendment Equal Protection claim against Bulmer in his individual capacity for any conduct that occurred before his resignation from ORDA;
>
> 2. Atkinson's N.Y. Exec. Law § 296 Discrimination and Hostile Work Environment claim;
>
> 3. Atkinson's 42 U.S.C. § 1983 punitive damages claim against Bulmer in his individual capacity; and it is further

ORDERED that the parties notify Magistrate Judge Treece in order to schedule further proceedings in accordance with this order; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge

28